IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CRAIG NEAL-EL, #351-405 | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PJM-13-1838 |
| CHAPLAIN D. BEITZEL, et al. | * | |
| Defendants | * | |
| | *** | |

## MEMORANDUM OPINION

Defendants, Frank B. Bishop, Jr., Gary Maynard,[1] and Chaplain Galen Beitzel, by their counsel, have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment with verified exhibits. ECF 12. Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d. 309 (4th Cir. 1975), self-represented Plaintiff Craig Neal-El ("Neal-El") was provided an opportunity to file an opposition with supporting materials, but has not done so. The matter is ready for disposition and a hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

## BACKGROUND

Neal-El, an inmate at Western Correctional Institution, claims his rights to due process, free access to religion, and under the Religious Land Use and Institutionalized Persons Act were violated when on June 15, 2013, Chaplain Beitzel banned him from attending Moorish Science Temple of America services held at the institution. As relief, Neal-El requests damages, injunctive, and declaratory relief. Complaint, ECF 1, p. 11.

In support of the Motion for Summary Judgment, Defendants have filed Chaplain Beitzel's ("Beitzel") declaration in which he attests to removing Neal-El from the Moorish

---

[1] Gary Maynard was Secretary of the Department of Public Safety and Correctional Services and Frank Bishop was Warden at Western Correctional Institution at the time Neal-El was removed from the service attendance list.

Science Temple of America (MTSA) attendance list at the request of prison staff in June of 2013. (Ex. 1, ¶ 4).  Beitzel explains that information was received that Neal-El "was possibly going to be involved in illicit activities that would put the security of the institution in jeopardy. Mr. Neal was removed from the June 14, 2013 service list in attempt to prevent any disruption to the daily activities at this institution." *Id*.  After the allegations were investigated by prison staff and found to have no merit, Neal-El was returned to the MSTA services list for the service to be held on June 21, 2013, and continued attending as normal. *See id*.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986).  Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir.2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott* 550 U.S. at 378 (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore,* 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent

factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson* 551 U.S. at 94; *Cruz v. Beto*, 405 U.S. 319 (1972). The requirement of liberal construction does not mean the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services,* 901 F.2d 387, 391 (4th Cir. 1990). The Court cannot assume existence of a genuine issue of material fact where none exists. Fed.R.Civ.P. 56(c).

## DISCUSSION

### A. Claims Against Defendants Maynard and Bishop

Neal-El claims with regard to Defendants Maynard and Bishop are based on their supervisory positions as neither Defendant appears to have been personally involved in the matters at issue. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.' " *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence: 1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; 2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit

authorization of the alleged offensive practices; and 3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The Complaint fails to forth such allegations, and there is no evidence to suggest Maynard or Bishop had actual or constructive knowledge of the matters at issue here. Consequently, Maynard and Bishop are entitled to summary judgment in their favor as a matter of law.

    B. **Exhaustion Of Administrative Remedies**

The Prison Litigation Reform Act of 1995 ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § ] 1983 ... or any other Federal law, by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 8485 (2006). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002); *see Jones v. Bock*, 549 U.S. 199, 211 (2007). A prisoner must exhaust administrative remedies "regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 741 (2001). In Maryland, filing a request for administrative remedy with the warden of the prison is the first of three steps in the Administrative Remedy Process. In order to satisfy the exhaustion requirement, a prisoner must also present his grievance to the Commissioner of Correction and the Executive Director of the Inmate Grievance Office.

In his declaration, Scott Oakley, Executive Director of the Inmate Grievance office, attests Neal-El has not filed a grievance with his office about removal from the attendance list. Ex. 2. Neal-El does not dispute that he has failed to present his claims to all levels required for

administrative exhaustion by filing a grievance with the Inmate Grievance Office; thus, these claims are dismissible for lack of exhaustion. In any event, for reasons to follow, even were these claims to proceed on the merits, they would prove unavailing.

### C. Religious Practice Claims

The Free Exercise Clause of the First Amendment applies to the states by virtue of the Fourteenth Amendment. *See Employment Division v. Smith*, 494 U.S. 872, 876-77 (1990). It provides that "Congress shall make no law ... prohibiting the free exercise" of religion. U.S. Const. Amend. I. A prisoner, however, does not enjoy the full range of freedoms as those not incarcerated; rather, state action violates a prisoner's constitutional rights if it burdens a prisoner's religious rights and is not reasonably related to a legitimate peneological interest. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972). That right is not unfettered. Prison restrictions that impact on the free exercise of religion but are related to legitimate penological objectives do not run afoul of the constitution. *See Turner*, 482 U.S. at 89-91.

The test to determine if the restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation in question. In addition, this court must examine: whether there are alternative means of exercising the right

asserted; whether accommodation of the right will impact on the orderly operations of the prison; and whether readily available alternatives to the regulation would be less restrictive. *See id*.2

An additional consideration is the standard provided by the Religious Land Use and Institutionalized Persons Act (RLUIPA). The Act provides in part that:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). RLUIPA establishes a statutory protection for the free exercise of religion that exceeds the requirements of the Free Exercise Clause of the First Amendment. *See Madison v. Virginia*, 474 F.3d 118, 127 (4th Cir. 2006) (stating that RLUIPA "requires the States to provide prisoners with religious accommodations that are not compelled by the Constitution"). In *Cutter v. Wilkerson*, 544 U.S. 709, 722 (2005), the Supreme Court stated:

> We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests.... [Congress] anticipated that courts would apply the Act's standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of cost and limited resources."

*Cutter*, 544 U.S. at 722. " 'RLUIPA adopts a ... strict scrutiny' standard." *Couch v. Jabe*, 679 F.3d 197, 203 (4th Cir. 2012) (quoting *Lovelace v. Lee,* 472 F.3d 174, 198 n. 8 (4th Cir. 2006)). Under RLUIPA, the "plaintiff bears the burden of persuasion on whether the policy or practice substantially burdens his exercise of religion. If the plaintiff satisfies this requirement, the

---

2 Although *Turner* involved a regulation, the *Turner* analysis also applies to individual actions or decisions that interfere with an inmate's religious exercise. *See, e.g., Boles v. Neet*, 486 F.3d 1177, 1181 n. 4 (10th Cir. 2007) (" 'individualized decision to deny a prisoner the ability to engage in religious exercise is analyzed in the same way as a prison regulation denying such exercise' " (quoting *Salahuddin v. Goord*, 467 F.3d 263, 274 n. 4 (2d Cir. 2006)).


government must then prove that the challenged policy is the least restrictive means of furthering a compelling governmental interest." *Couch*, 679 F.3d at 200 (internal citations omitted).

In this case, Neal-El claims are wholly premised on a temporary one-week removal from the religious service list during which time prison official investigated information that he was involved in activities jeopardizing institutional security. Once the information was found meritless, prison officials returned Neal-El to the attendance list. This one-time denial of attendance at a group religious service in order to ensure institutional security does not amount a substantial burden on religious practice nor a claim of constitutional proportion. Notably, there are no facts to suggest that Neal-El was otherwise prevented from engaging in the practices and following the tenets of his faith during this brief time.

In the absence of an abridgment of a liberty interest constitutional infringement, Neal-El has no basis for alleging a violation of procedural due process. The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *See Board of Regents of State Colleges. v. Roth,* 408 U.S. 564, 569 (1972). The first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *See Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). Liberty interests "may arise from the Constitution itself, by reason of guarantees implicit in the word liberty, ... or [they] may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citations and quotations omitted). Having concluded Neal-El claims do not rise to a matter of constitutional proportion, there is no violation of due process.

When viewing the facts in the light most favorable to Plaintiff, this Court finds Neal-El has not set forth claims of constitutional magnitude. Accordingly, even had these claims been fully exhausted, they do not provide grounds for relief.

## CONCLUSION

For these reasons, the Court will grant Defendants Motion for Summary Judgment. Summary judgment will be entered in favor of Defendants and against Plaintiff by separate Order to follow.

June 23, 2014

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE